UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

JESUS ABULARACH,

                    Plaintiff-Counterdefendant,        **MEMORANDUM & ORDER**
                                            22-CV-1266 (MKB)

            v.

HIGH WING AVIATION LLC,

                    Defendant-Counterclaimant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Jesus Abularach commenced the above-captioned action against Defendant High

Wing Aviation LLC on March 8, 2022, alleging breach of contract and, in the alternative, unjust

enrichment, arising out of the purchase and sale of an aircraft.  (Compl., Docket Entry No. 1.)

Defendant failed to respond, and, on June 1, 2022, the Clerk of Court entered default against it.

(Clerk's Entry of Default, Docket Entry No. 12.)  On February 3, 2023, the Court granted

Plaintiff's motion for default judgment, found Defendant liable for breach of contract, and

awarded Plaintiff $180,000 in damages and prejudgment interest ("February 2023 Order").  (Feb.

2023 Order, Docket Entry No. 21.)  On February 7, 2023, the Clerk of Court entered judgment in

favor of Plaintiff in the amount of $194,867.30.  (Judgment, Docket Entry No. 23.)  On May 22,

2024, on Defendant's motion, the Court set aside the default judgment and vacated the February

2023 Order and the Clerk of Court's entry of default.[1]  (Minute Entry dated May 22, 2024.)

On June 3, 2024, Plaintiff filed a letter motion for payment of attorneys' fees in the

amount of $24,480 in connection with his opposition to Defendant's motion to vacate the default

---

[1] On May 27, 2024, Defendant filed an Answer that asserted counterclaims for breach of
contract, fraud, and misrepresentation.  (Answer, Docket Entry No. 31.)

judgment, and Plaintiff opposed the motion.[2]  For the reasons explained below, the Court grants Plaintiff attorneys' fees in the reduced amount of $22,032.

## I.  Background

### a.  Factual background

In or around February of 2021, Plaintiff's agent, Jared Ortiz, entered into negotiations on Plaintiff's behalf to purchase an aircraft that Defendant had for sale (the "Aircraft").  (Compl. ¶¶ 7–8.)[3]  After the parties agreed on the purchase price, Plaintiff sent two wire transfers, one for $70,000 and the other for $110,000, to Defendant.  (*Id.* ¶¶ 9–10.)  Defendant did not deliver the Aircraft to Plaintiff.  (*Id.* ¶ 12.)

In early April of 2021, the United States Department of Homeland Security ("DHS") notified Defendant that the federal government was investigating possible violations of the Export Administration Regulations ("EAR") arising out of certain of Defendant's aircraft sales. (Decl. of Hector Espinoza ("Espinoza Decl.") ¶ 7, annexed as Ex. A to Def.'s Letter Mot. to Set Aside Default J., Docket Entry No. 28-2.)  DHS also requested information concerning any pending sales to purchasers from Bolivia, and Defendant informed DHS of the pending sale of the Aircraft to Plaintiff.  (*Id.*)  On April 12, 2021, the Bureau of Industry and Security ("BIS") of the United States Department of Commerce ("DOC") sent Defendant a letter (the "April 2021 Letter") informing him that the shipment of four aircrafts, including the Aircraft, had been "detained" because the government had "reason to believe that the shipment of [the aircrafts] to

---

[2] (Pl.'s Mot. for Att'ys' Fees ("Pl.'s Mot."), Docket Entry No. 33; Def.'s Opp'n to Pl.'s Mot. ("Def.'s Mot."), Docket Entry No. 34; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 37.)

[3] The Court is relying on facts that Defendant admitted in its Answer or attested to in the declaration it submitted in support of its motion to vacate the default judgment.

[their] final destination [would] result in a violation of the [EAR]." (*Id.* ¶ 8; *see also* April 2021 Letter, annexed as Ex. E to Def.'s Letter Mot. to Set Aside Default J., Docket Entry No. 28-6.) The letter directed Defendant to retain custody of the four aircrafts pending further instructions from BIS. (April 2021 Letter.)

After receiving the April 2021 Letter, Defendant informed DHS that $165,000 of the funds that Plaintiff had deposited with Defendant was for the purchase of the Aircraft. (Espinoza Decl. ¶ 9.) DHS advised Defendant that the Aircraft was being "frozen as a potential [f]ederal seizure asset" and demanded that he forfeit $120,000 to the government. (*Id.*) Defendant informed Ortiz that the government had seized the Aircraft. (*Id.* ¶ 10; Compl. ¶ 13.)

On August 17, 2021, United States Customs and Border Protection ("CBP") informed Defendant that $120,000 "was seized and . . . subject to forfeiture under" 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), and 1961(1) as proceeds of unlawful activity. (Aug. 2021 Letter, annexed as Ex. F to Def.'s Letter Mot. to Set Aside Default J., Docket Entry No. 28-6.) The letter also informed Defendant that CBP intended to "immediately commence with administrative forfeiture proceedings against the monetary instruments" after publishing notice on the CBP website, and that the currency would be forfeited if no person claiming an interest in the currency submitted an election of proceedings form to CBP. (*Id.*)

In or about September of 2021, the government returned the Aircraft to Defendant. (Espinoza Decl. ¶ 12.) Despite continued demands, Defendant has not made or proposed any arrangement to either deliver the Aircraft or reimburse Plaintiff. (Compl. ¶ 15.)

### b. Procedural history

#### i. Default judgment

Plaintiff served Defendant with a summons and the Complaint, (*see* Summons Returned Executed, Docket Entry No. 9), but Defendant failed to appear or respond to this action. On

May 27, 2022, Plaintiff requested a certificate of default.  (Pl.'s Request for Certificate of Default, Docket Entry 10.)  On June 1, 2022, following the Clerk of Court's entry of default against the Defendant, Plaintiff moved for a default judgment.  (Pl.'s Mot. for Default J., Docket Entry No. 13.)  On June 2, 2022, the Court referred Plaintiff's motion to Magistrate Judge Robert M. Levy for a report and recommendation.  (Order dated June 2, 2022.)  By report and recommendation dated November 10, 2022, Judge Levy initially recommended that the Court deny Plaintiff's motion for default judgment for failure to establish the existence of subject matter jurisdiction ("Initial R&R").  (Initial R&R 3, Docket Entry No. 15.)  The Initial R&R was later withdrawn after Plaintiff provided supplemental documentation that established complete diversity.  (*See* Order Withdrawing Report and Recommendation dated Dec. 6, 2022; Decl. of Jesus Abularach in supp. of Pl.'s Mot. for Default J., Docket Entry No. 17.)  By report and recommendation dated December 19, 2022, Judge Levy recommended that the Court grant Plaintiff's motion for default judgment, find Defendant liable for breach of contract, and award Plaintiff $180,000 in damages and prejudgment interest "at a per diem interest rate of $44.38" from "March 8, 2022 to the date of this [C]ourt's judgment" ("R&R").  (R&R 5, Docket Entry No. 19.)  On February 3, 2023, the Court adopted the unopposed R&R.  (Feb. 2023 Order.)  Plaintiff served Defendant with a copy of his request for certificate of default, his motion for default judgment, the Initial R&R, the R&R, and the February 2023 Order before the Clerk of Court entered judgment in Plaintiff's favor.[4]

---

[4] (*See* Affidavit of Serv., annexed as Attachment 4 to Pl.'s Request for Certificate of Default, Docket Entry No. 10-4 (served May 27, 2022); Affidavit of Serv., annexed as Attachment 2 to Pl.'s Mot. for a Default J., Docket Entry No. 13-2 (served June 1, 2022); Affidavit of Serv. for Initial R&R, Docket Entry No. 16 (served November 10, 2022); Affidavit of Serv. for R&R, Docket Entry No. 20 (served December 19, 2022); Affidavit of Serv. for Feb. 2023 Order, Docket Entry No. 22 (served February 3, 2023).)

### ii.    Defendant's motion to vacate the default judgment

Several months later, on July 5, 2023, Defendant appeared in this action for the first time, (Notice of Appearance, Docket Entry No. 24), and on August 10, 2023, sought leave to file a motion to vacate the default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure with a proposed stipulation agreed to by both parties regarding a briefing schedule, (Def.'s Letter Mot. to Set Aside Default J., Docket Entry No. 25).

On September 18, 2023, Defendant moved to set aside the default judgment, (Def.'s Letter Mot. to Set Aside Default J. ("Def.'s Mot. to Vacate J."), Docket Entry No. 28), and on October 31, 2023, Plaintiff opposed the motion, (Pl.'s Opp'n to Def.'s Mot. to Vacate J. ("Pl.'s Opp'n"), Docket Entry No. 29). Defendant sought vacatur of the default judgment on grounds that (1) the default was not willful because it reasonably believed that the federal authorities would "resolve the . . . litigation to [Defendant's] satisfaction," (Def.'s Mot. to Vacate 7–10); (2) it has a meritorious defense that its agreement to sell the Aircraft to Plaintiff "was illegal as determined by several federal authorities with overlapping jurisdiction," (*id.* at 10–12); and (3) Plaintiff will not suffer any prejudice because he "would simply be in the same position of every plaintiff in every case" and "have the burden of establishing [his] claims," (*id.* at 12.)

In opposition to Defendant's motion, Plaintiff argued that (1) Defendant's failure was willful as Defendant "admitted that it was served with the Summons and Complaint and has no valid excuse for neglecting the six times it was served with papers in this litigation," (Pl.'s Opp'n 9), nor has it submitted "evidence to support its claim that the [f]ederal [g]overnment was going to defend [it]," (*id.* at 9); (2) the preference in case law to decide cases on the merits does not relieve Defendant of the burden to provide a valid excuse for defaulting, (*id.* at 11–14); (3) Defendant cannot establish a meritorious defense because it "forfeited its right to contest the allegations in Plaintiff's Complaint" by failing to object to the R&R, (*id.* at 16–17 & n.3),

admitted "that it forfeited monies to the government as well as by its execution of Form 4607, Notice of Abandonment and Asset to Forfeiture of Seized Merchandise," (*id.* at 16), and bases its defense on "unverified statements" that the government actually determined the transaction was unlawful and seized the Aircraft and funds from Defendant and that are not supported by the evidence before the Court, (*id.* at 17–18); and (4) Plaintiff has already been prejudiced by Defendant's decision to unilaterally forfeit a portion of the purchase price to the government without notifying Plaintiff, (*id.* at 14–15), and will be further prejudiced by Defendant's delay, "coupled with the expense of litigating a default judgment action," (*id.* at 15 (citing *State Farm Mut. Auto Ins. Co. v. Cohan*, No. 09-CV-2990, 2010 WL 890975, at *4 (E.D.N.Y. Mar. 8, 2010), *aff'd* 409 F. App'x 453 (2d Cir. 2011))).

### iii.    The Court's decision vacating the default judgment

On May 22, 2024, the Court heard oral argument on Defendant's motion ("Oral Argument").  The Court concluded that Defendant's "conduct was willful" because "it was certainly clear when default papers were served[,] . . . none of which Defendant disputes they received, that [Defendant was] fully aware that they were in default and that the U.S. Government had not appeared in this action, and that they needed to take some action."  (Tr. of Civil Cause for Oral Argument ("Oral Argument Tr.") 16:23–17:10.)  The Court also concluded that "based on the facts that have been alleged by the [D]efendant that if accepted as true or if found to be true," Defendant "likely has a meritorious defense to the action brought by Plaintiff" and Plaintiff's prejudice arguments were not a sufficient basis to deny Defendant's motion. (Oral Argument Tr. 17:19-25.)  The Court granted Defendant's motion to set aside the default judgment and vacated the February 2023 Order and the Clerk of Court's entry of default.  (Oral Argument Tr. 18:3-4; Minute Entry dated May 22, 2024.)

In light of Plaintiff's argument that it was prejudiced by the cost of defending against

Defendant's motion, the Court directed "Plaintiff's counsel to submit to the Court, the cost of defending this motion" and stated that the Court would impose the cost on Defendant.  (Oral Argument Tr. 18:1-3.)  The Court also directed Plaintiff to submit "any affidavits, exhibits, or other written materials necessary to support the amount requested."  (Minute Entry dated May 22, 2024.)

## II.  Discussion

Plaintiff requests the Court order Defendant "to promptly pay Plaintiff the $24,480.00 which Plaintiff incurred in responding to the [Defendant's] motion" to vacate the default judgment.  (Pl.'s Reply 1; Pl.'s Mot. 1.)  In support, Plaintiff provides invoices from his attorney, Yitzchak E. Cohen ("Counsel"), dated September 28, 2023, in the amount of $6,255; November 2, 2023, in the amount of $16,830; and June 3, 2024, in the amount of $1,395.  (Pl.'s Mot. 3–7.) Counsel contends that he "actually spent the time that is set forth in the foregoing invoices" and that his experience justifies his hourly rate.  (Pl.'s Mot. 1.)

Defendant argues that Plaintiff has failed to "specifically and adequately address" the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  (Def.'s Opp'n 3–6 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 118–21 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008)).)  Defendant also argues that the requested fee is excessive and that Plaintiff's request for legal research fees is "inadequately documented."[5]  (*Id.* at 4–5.)

---

[5]  Defendant also argues that the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), weigh against awarding Plaintiff attorneys' fees," (Def.'s Opp'n 3–6 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008))), and relies on this Court's ruling in *Oscilloscope Pictures, Inc. v. Monbo*, No. 17-CV-7458, 2019 WL 2435644, at *1 n.3 (E.D.N.Y. Mar. 25, 2019), to argue that the Court may decline to award attorneys' fees

Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . . ." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)); *see also Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 357–58 (2d Cir. 2021) (same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))).  In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's

---

because "Plaintiff has not suffered undue prejudice," (Def.'s Opp'n 6.)  As discussed on the record during the Oral Argument, *see* Section 1.b *supra*, the Court determined that it would impose upon Defendant Plaintiff's costs to defend against the motion to vacate default judgment. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) ("In determining whether to exercise its discretion to set aside a default . . . a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party."); *Criollo v. NY Fine Interiors Inc.*, No. 19-CV-5794, 2021 WL 7367079, at *3 (E.D.N.Y. Nov. 2, 2021) (collecting cases and noting that "[i]n [the Second Circuit], courts routinely exercise their inherent powers by imposing conditions on the vacatur of an entry of default, including by requiring the defendant to pay the plaintiff's attorney's fees and costs accrued in relation to the entry of default"), *report & recommendation adopted*, 2022 WL 354847 (E.D.N.Y. Feb. 7, 2022).  The Court's decision on Plaintiff's motion for attorneys' fees is limited to whether the request is reasonable and, accordingly, the Court considers only Defendant's arguments that challenge the reasonableness of Plaintiff's request.

fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill*, 522 F.3d at 190); *see also Ortiz*, 843 F. App'x at 359 (same). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606–07 (2d Cir. 2020) (same). "Courts look to '[b]oth "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint.'" *Holick*, 48 F.4th at 106 (quoting *Barfield*, 537 F.3d at 152). Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see also id.* at 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson*, 488 F.2d at 717–19; *see also, e.g.*, *Lilly*, 934 F.3d at 230 (same).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183); *see also SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*, No. 23-7313, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (quoting *Millea*); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable

number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)).  The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")).

a. **Reasonable hourly rate**

Plaintiff argues that Counsel's hourly rate of $450 is "clearly within the range of reasonableness for [his] experience" and in support contends that he "was admitted to the New York bar, Appellate Division, First Department, on June 16, 1997," "admitted to practice in this Court on May 8, 2002," and has been a commercial litigator for his entire career.  (Pl.'s Mot. 1.)

Defendant argues Plaintiff has presented "no case(s) in which he was paid $450 per hour by a client" and "cites no federal or state court proceedings in which he was awarded such fees." (Def.'s Opp'n 3–6.)

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Lilly*, 934 F.3d at 231 (alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see also Agudath*, 2023 WL 2637344, at *2 (same).  Such rates

should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see also Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with rates prevailing in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *see also Chaparro*, 2021 WL 5121140, at *1–2; *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Rubin v. HSBC Bank USA, NA*, --- F. Supp. 3d ---, ---, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (adjusting reasonable hourly rates in the Eastern District for inflation and market conditions to $450 to $650 for

partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals (footnotes omitted)); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("[C]ourts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. County of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sept. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report & recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022))).  In addition, "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate." *McDonald ex rel. Prendergast v. Pens. Plan of the NYSA-ILA Pens. Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006); *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 143 n.6 (2d Cir. 2007) (same); *see Linde v. Arab Bank, PLC*, No. 04-CV-2799, 2023 WL 9232942, at *6 (E.D.N.Y. Nov. 28, 2023) (quoting *McDonald*), *report & recommendation adopted*, 2024 WL 3873708 (E.D.N.Y. Aug. 19, 2024).

Plaintiff seeks $24,480 in connection with opposing Defendant's motion to vacate the default judgment, which represents 54.4 hours billed at his Counsel's hourly rate of $450.  Counsel had approximately twenty-seven years of experience as a commercial litigator and currently has his own practice.  Applying the forum rule, the Court finds Counsel's hourly rate is reasonable for his experience and expertise.  Counsel's rate, while at the top of the hourly range that courts in this District have historically approved for attorneys with comparable experience, falls at the low end of the range when adjusted for inflation and market conditions.  *See Rubin*,

2025 WL 248253, at *6 (adjusting the reasonable hourly rate range for partners in the Eastern

District from $300 to $450 to $450 to $650); *Prime Contractors Inc. v. APS Contractors Inc.*,

No. 22-CV-1581, 2024 WL 4824550, at *17 (E.D.N.Y. Nov. 19, 2024) (noting that "[t]he Eastern

District of New York has held that '[i]n this district, hourly rates "generally range from $300.00 to

$450.00 for partner-level attorneys"'" (citation omitted)); *Perez v. Premier Infosource, Inc.*, No.

23-CV-7366, 2024 WL 5285001, at *4 (E.D.N.Y. Nov. 18, 2024) (approving hourly rate of $450

for partner at law firm with nearly twelve years of experience seeking attorneys' fees with motion

for default judgment), *report & recommendation adopted as modified on other grounds*, 2025 WL

35943 (E.D.N.Y. Jan. 6, 2025); *Khotovitskaya v. Shimunov*, No. 18-CV-7303, 2020 WL 9209273,

at *3–4 (E.D.N.Y. Oct. 29, 2020) (approving hourly rate of $450 for principal of firm with twenty-

five years of litigation experience seeking attorneys' fees for "work required to obtain certificates

of default, move for default judgment, oppose defendants' motion to vacate the default, and

prepare for oral argument"), *report & recommendation adopted as modified on other grounds*,

2021 WL 868781 (E.D.N.Y. Mar. 9, 2021).

  **b. Reasonable hours expended**

  Plaintiff appears to argue that Counsel's hours are reasonable because Counsel "actually

spent the time that is set forth" in his invoices.  (Pl.'s Mot. 1.)

  Defendant argues that when considering "the amount involved in the case and the results

obtained," the requested fee is excessive because it is 15% of the alleged contract price of the

aircraft of $165,000.  (Def.'s Opp'n 4.)  Defendant also argues that the fee request for "more

than 32 hours spent on legal research" is "excessive, or at least inadequately documented"

because responding to a motion to vacate the default judgment is clearly within counsel's

"expertise and toolbox" as a commercial litigator.  (*Id.* at 5.)  In addition, Defendant contends

that the case "presented no significantly difficult or novel questions for an adversary with

[Counsel's] expertise" and notes that Counsel "was unsuccessful in opposing the motion to vacate the default." (*Id.* at 5–6.)

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation." (alteration in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))); *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sept. 9, 2024) ("In determining whether the number of hours worked is reasonable, 'a district court should "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."'" (quoting *Chaparro*, 2021 WL 5121140, at *2)). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (internal quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d. Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and

"must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020))), *report & recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024).  Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours."  *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)).  However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement."  *Id.* (quoting *Restivo*, 846 F.3d at 591).  "In determining the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'"  *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023).  "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'"  *Id.* at 126 (quoting *Raja*, 43 F.4th at 87).

Based on Counsel's experience and expertise as well as the level of complexity involved in defending against a motion to vacate judgment, the Court finds the 54.4 hours invoiced to be excessive.  Plaintiff appropriately "specif[ies] 'the date, the hours expended, and the nature of the work done,'" *Raja*, 43 F.4th at 87 (quoting *N.Y. State Ass'n for Retarded Child*, 711 F.2d at

1148), and, for each research task, briefly describes the legal issue.[6]  However, Counsel employed block billing in its invoicing that makes it impossible to determine the precise number of hours spent on legal research versus other substantive legal work.  After excluding the 4.5 hours that Counsel's invoices attribute solely to communications with Plaintiff, administrative tasks, conferring with Defendant to prepare the stipulated briefing schedule for the motion to vacate the default judgment, and Oral Argument, Counsel spent approximately 49.9 hours on substantive legal work that includes 1.5 hours for review of Defendant's motion, 9.3 hours for legal research, 13.4 hours for drafting the opposition, 15.1 hours for a mix of legal research and drafting, and 10.6 hours for a mix of reviewing Defendant's motion, additional drafting and legal research, and corresponding with another attorney regarding the substance of the opposition and with Plaintiff.  (Pl.'s Mot. 3–7.)  While the aggregated task descriptions preclude the Court from "conduct[ing] a meaningful review of [Counsel's] hours" for any individual task, *Raja*, 43 F.4th at 87, the Court nevertheless finds that 49.9 hours for substantive legal work overall in support of the opposition to the motion is significantly higher than in other cases where courts have awarded attorneys' fees in connection with defending against vacaturs of default judgments.[7]

---

[6]  Although Defendant argues that the "more than 32 hours of legal research" Counsel billed is excessive or inadequately documented, Defendant does not explain how or why Plaintiff's legal research hours are "inadequately documented."  (Def.'s Mot. 5)

[7]  Defendant's argument that Plaintiff's total attorneys' fees request is excessive because it constitutes 15% of the damages, (Def.'s Mot. 4), is unavailing.  The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)); *see Fisher v. SD Protec. Inc.*, 948 F.3d 593, 602 (2d Cir. 2020) (quoting same).  Although the Second Circuit's rejection has generally arisen in the context of attorneys' fees awarded pursuant to fee-shifting statutes, the Court finds the Second Circuit's reasoning applicable as the motion practice was triggered by the Defendant's willful default. *See Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 635 (2d Cir. 2018) ("In litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and

For example, in *Tatintsian v. Vorotyntsev*, in awarding attorneys' fees for time that the plaintiff's counsel spent in moving for a default judgment and opposing defendant's subsequent motion to vacate the default judgment, the court found 47.5 hours that plaintiff's counsel expended on both its motion for default judgment and opposition to defendant's motion reasonable. No. 16-CV-7203, 2020 WL 2836718, at *6 (S.D.N.Y. June 1, 2020). Only 23.5 hours were spent on opposing the motion to vacate judgment.[8] *See* Exhibit A – Timesheet of Mot. for Att'ys Fees at 3–4, *Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (S.D.N.Y. June 1, 2020), ECF No. 254-1. Plaintiff does not argue that opposing the motion to vacate in this action was more complex or challenging than a typical action. Further, based on counsel's twenty-seven years of experience, neither the factual nor the legal issues warranted 49.9 hours to prepare opposition papers. *See*

---

of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously. It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy." (quoting *Kassim*, 415 F.3d at 252)); *see also Tomassini v. FCA US LLC*, No. 21-2785, 2023 WL 2194016, at *2 (2d Cir. Feb. 24, 2023) (quoting *Kassim*).

   [8] *See, e.g.*, *Chesney v. Prestige Motor Sales, Inc.*, No. 15-CV-6369, 2018 WL 11579072, at *2 (E.D.N.Y. May 31, 2018) (finding 15.1 hours expended on motion to vacate judgment and prepare motion for attorneys' fees reasonable); *see also Calle v. Pizza Palace Cafe LLC*, No. 20-CV-4178, 2022 WL 609142, at *15 (E.D.N.Y. Jan. 4, 2022) (finding reasonable 12.2 hours billed for attorneys' fees for all work in case through filing of a default motion); *Schwartz v. Chan*, 142 F. Supp. 2d 325, 331–32 (E.D.N.Y. 2001) (reducing hours from 96 hours to 25 hours for attorneys' fees plaintiff sought for work performed before and after the court restated a vacated default judgment because "the legal issues surrounding default judgments and the vacatur thereof [were] straightforward" and the court's finding that "a reasonably experienced attorney in this field could have obtained the results achieved by counsel" in fewer hours based on "the [c]ourt's familiarity with this case, the nature of the litigation, and the lack of specificity in [plaintiff's] invoice"); *Forrest v. Simonds*, No. 96-CV-175, 1997 WL 610761, at *5 (N.D.N.Y. Sept. 30, 1997) (reducing attorneys' fee request "in light of the experience plaintiff's attorney claims and the quality of his submissions" from 30.25 hours to 24.25 hours for legal services performed before and in defense of defendant's motion to vacate entry of default); *Big R Food Warehouses v. Loc. 338 RWDSU*, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (finding 31.25 hours for moving and arguing a default motion reasonable).

*Khotovitskaya*, 2020 WL 9209273, at *3 ("In awarding attorney's fees, the [c]ourt is guided by the fact that motions to vacate a default are relatively simple legal matters, taking into account the attorney's degree of skill and the [c]ourt's own experience dealing with similar claims."); *see also Barfield*, 537 F.3d at 152 ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff."  (internal quotation marks omitted)).

Moreover, Plaintiff's request includes two administrative tasks that are similar to work that courts in this Circuit have found to be noncompensable: (1) drafting and filing a notice of appearance for Counsel in this action, (Pl.'s Mot. 4); and (2) drafting a letter to this Court on November 1, 2023 "regarding Abularach's Opposition papers filed in connection with the Defendant's Motion to Vacate the Default Judgment" that the Court cannot identify, (*id.* at 7). *See Barfield*, 537 F.3d at 139 (affirming district court's determination that time "spent on administrative tasks should not be compensated at all"); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2020 WL 7647178, at *5 (S.D.N.Y. Dec. 23, 2020) (reducing plaintiff's hours for vague billing records and to adjust for non-compensable tasks because "a court may exclude time spent by attorneys on 'less skilled work, like filing and other administrative tasks'" (quoting *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), *aff'd sub nom.* 487 F. App'x 619 (2d Cir. 2012))); *Indep. Project, Inc. v. Ventresca Bros. Constr. Co., Inc.*, 397 F. Supp. 3d 482, 497 (S.D.N.Y. 2019) (excluding from attorneys' fees award hours "spent working on submissions that were never filed"); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *9 (E.D.N.Y. Sept. 25, 2013) (declining to award fees for time spent on "communicating with the process server, filing documents with the court, scheduling depositions, and other related [administrative] tasks"); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (collecting cases and noting that "[c]ourts of this Circuit

have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients"); *see also Harty v. Par Builders, Inc.*, No. 12-CV-2246, 2016 WL 616397, at *5 (S.D.N.Y. Feb. 16, 2016) (declining to award attorneys' fees for time spent for a *pro hac vice* motion in part because "the decision not to use counsel already admitted . . . was entirely up to [the plaintiff], and [the defendant] need not pay for that choice").

The Court is mindful that Defendant's default was willful and Plaintiff would not have incurred the requested fees if not for Defendant's default, and is also mindful that Defendant's default needlessly delayed this action for over two years as Defendant did not file its Answer until May 27, 2024, over two years after the original deadline of April 20, 2022. (*See* Order dated May 19, 2022; Answer.) *Cf. Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 652 (S.D.N.Y. 2018) (declining to award the full amount of attorneys' fees sought as a result of the defendant's default because, *inter alia*, the default only delayed the litigation by two months).

In balancing the above considerations — Plaintiff's fee request is relatively high, incorporates block billing, includes noncompensable administrative tasks, and is the result of Defendant's willful default that delayed this litigation by over two years — the Court reduces Plaintiff's hours by 10%. *See H.C.*, 71 F.4th at 126 ("[T]he district court also has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (internal quotation marks and citation omitted)); *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534, 2020 WL 423422, at *5 (E.D.N.Y. Jan. 27, 2020) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." (internal quotation marks and citation omitted)); *see also Lilly*, 934 F.3d at 234 (finding no error where district court reduced attorneys' fee award to account for clerical tasks performed by attorney); *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 125 (E.D.N.Y. 2023)

19

(deducting 10% from requested attorneys' fees because it "was unreasonable that [the plaintiffs'] counsel could not litigate [the] case more efficiently" and to account for "numerous errors"); *Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625, 2022 WL 17718551, at *8 (E.D.N.Y. Dec. 15, 2022) (applying a 10% reduction to counsel's hours because of "numerous instances of block-billing"); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354, 2021 WL 2188280, at *16 (E.D.N.Y. Feb. 12, 2021) (reducing attorneys' fee award by 20% to account for duplicative work as well as billing for "work that could reasonably have been performed by a paralegal professional or administrative assistant" such as "one hour preparing proofs of service and filing such proofs with the court" and 0.3 hours for filing of motions), *report & recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); *Filo Promotions*, 311 F. Supp. at 652 (S.D.N.Y. 2018) (awarding approximately one-third of the requested amount of attorneys' fees in part because of "the relative lack of complexity of the legal issues involved"); *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 725 (S.D.N.Y. 2018) (reducing requested attorneys' fees by 25% in part because the time spent on the matter was excessive relative to the straightforward nature of the claims).

  **c. Lodestar calculation**

   The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). Accordingly, consistent with the analysis above, the Court calculates the lodestar as $22,032, which represents the 54.4 total hours invoiced reduced by 10% to 48.96 hours multiplied by the reasonable hourly rate of $450.

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for attorneys' fees in the

amount of $22,032.

Dated: February 5, 2025
        Brooklyn, New York

SO ORDERED:


_____/s/MKB_____
MARGO K. BRODIE
United States District Judge